**UNITED STATES of America, Plaintiff/Appellee,**

v.

**Jennieve Rose BUNKERS, Defendant/Appellant.**

**No. 74–2944.**

United States Court of Appeals, Ninth Circuit.

Aug. 5, 1975.

Certiorari Denied Nov. 17, 1975. See 96 S.Ct. 400.

**1218**

Gary E. McCurdy (argued), Sacramento, Cal., for defendant-appellant.

Donald Heller, Asst. U. S. Atty. (argued), Sacramento, Cal., for plaintiff-appellee.

## OPINION

Before CHAMBERS and CHOY, Circuit Judges, and EAST,* Senior District Judge.

EAST, Senior District Judge:

## THE APPEAL

The defendant-appellant Jennieve Rose Bunkers (hereinafter Bunkers) appeals from a judgment of her conviction and sentence for a postal employee's theft of United States mailing matters in violation of 18 U.S.C. § 1709.

There is presented a single issue on appeal: Did the District Court err in denying Bunkers' motion for the suppression as evidence of the fruits of the crime searched for and seized from her locker at the post office and her following made incriminating statement?

We conclude that the District Court did not so err and affirm.

## THE FACTS

During the pertinent times subsequent to on or about January 1, 1974, Bunkers was a postal employee at the Colonial Post Office in Sacramento, California. Experienced postal inspectors were cognizant of a recurring disappearance of C.O.D. parcels at the post office and charted the time of C.O.D. package losses for a correlation thereof to the work schedules of the several employees at the post office. Through such charting, the inspectors determined that Bunkers' work schedule coincided or correlated with the dates and times of the C.O.D. package losses. The postal inspectors, based upon that information, suspected Bunkers and made the investigatory decision to conduct from the secreted observation galleries an undetected surveillance of Bunkers during her working hours. The postal inspectors saw her take a parcel from her assigned work area to the women's locker room and within one minute return from the locker room without the parcel.

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

Thereupon the postal inspectors requested the post office manager to request the office's female supervisor to search the locker and she observed several post office packages therein. During the day, the locker was searched for a second time by the manager of the post office who also observed the postal packages and for a third time by the manager and one of the postal inspectors following Bunkers' leaving for the night. At this last search, two locks were placed on the locker door and the manager and the postal inspector each retained the key to one lock. The following morning Bunkers was met by the postal inspectors and the locker was opened in her presence. Nine items of postal matter so found were seized from the locker. Bunkers subsequently signed the incriminating statement.

The locker in question was government property within the post office building and was furnished Bunkers as an incident of her employment " . . to be used for [her] convenience and . . . subject to search by supervisors and postal inspectors." Part 643 of the Postal Manual.

The regulatory leave for governmental search of the employees' lockers is emphasized by the alleviation or protection from indiscriminate governmental searches by Article 37, Section 5, of the Union Agreement with the postal service carriers which provides that:

> "*Except* in matters where there is reasonable cause to suspect criminal activity, a steward or an employee shall be given the opportunity to be present in any inspection of employees' lockers." (Italics supplied.)

Bunkers had been supplied with a copy of this agreement at the commencement of her employment and the evidence is undisputed on these two factors:

(a) Bunkers had no authority or permission to take parcels or packages out of her work area of the post office, and no postal employee was permitted or held authority to take mailing matter entrusted to him to the locker areas; and

(b) Bunkers was fully advised of the regulatory term and conditions of her use of the locker and the government's continuing leave to search it.

## BUNKERS' CONTENTION

Bunkers contends that the search of her locker without a search warrant violated her Fourth Amendment immunities. We disagree and conclude the contention to be untenable.

## DISCUSSION

The Supreme Court's decision in *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), makes it clear that the claim of:

> "[T]he protection of the [Fourth] Amendment [against unreasonable searches and seizures] depends not upon a property right in the invaded [locker] but upon whether the [locker] was [an area] in which there was a reasonable expectation of freedom from governmental intrusion. See 389 U.S., at 352, 88 S.Ct., at 511. The crucial issue, therefore, is whether, in light of all the circumstances, [Bunkers' locker] was such a place." *Mancusi v. DeForte*, 392 U.S. 364, 368, 88 S.Ct. 2120, 2124, 20 L.Ed.2d 1154 (1968).

*United States v. Hitchcock*, 467 F.2d 1107, 1108 (9th Cir. 1972), defines the *Mancusi* statement of "a reasonable expectation of freedom from governmental intrusion" thus:

> "The protection of the Fourth Amendment no longer depends upon 'constitutionally protected' places. Instead, we must consider 'first that a person have exhibited an actual (subjective) expectation of privacy and second, that the expectation be one that society is prepared to recognize as "reasonable." ' "

The public interest in the protection of the safety of the mail and the need for the prevention and discovery of theft and desecration of the mails are of great governmental postal service urgency.

On the other side, Bunkers' private interest in the locker is at most a very restricted and regulated employment related use thereof.

The active role and mission of the postal authorities in protecting the security and safety of the mails from theft and desecration and the detection of postal crimes is famous, if not notorious, through the open public news media exploitation thereof. The postal inspectors' regular use of hidden-from-view cat-walks and galleries in postal service buildings for the unobserved surveillance of postal employees at work is of common knowledge. In short, and we paraphrase *Hitchcock* at 1108, in postal service buildings official surveillance has traditionally been the order of the day.

Manifestly Bunkers "exhibited an actual (subjective) expectation of privacy" by placing the C.O.D. parcels in the locker. However, we are satisfied that it would be incredulous for any postal employee to hold a reasonable expectation of privacy from the here involved postal inspectors' search of his work connected locker for the fruits of suspected criminal activity. We decline to believe that society is prepared to recognize Bunkers' use of the government supplied employment connected locker to hold in privacy the C.O.D. parcels as "reasonable." [1]

Bunkers obliquely contends that the postal inspectors' observation of her with-parcel-entry-to and quick-without-parcel-exit-from the locker room area was sufficient to raise probable belief and cause to seek the issuance of a search warrant, without which the search of her locker was unreasonable. We disagree. The inspectors held the continuing regulatory leave and unrestricted right to inspect and search the locker at any time "where there is reasonable cause to suspect criminal activity." The observation of the work-area-to-locker-room-with package-trip of Bunkers at the very least gave the experienced postal inspectors a well-founded suspicion that criminal activity was afoot. Each of the three searches pursuant to that reasonably grounded suspicion of criminal activity was lawful and armed the inspectors with ample probable cause to arrest Bunkers for the commission of a crime in their presence. The securing of the situation by the two locks on the locker was a freezing of the status quo of the locker and its contents after Bunkers had left for the evening and until her lawful arrest on the following morning. The seizure of the stolen postal parcels from the locker in the presence of Bunkers was a lawful incident of her arrest.

Accordingly the warrantless search for and the ultimate seizure of the postal packages from Bunkers' locker was not unreasonable and unlawful. *United States v. Donato*, 269 F.Supp. 921 at 923–24 (E.D.Pa.), *aff'd*, 379 F.2d 288 (3d Cir. 1967).[2] Bunkers' reliance upon the rationale of *United States v. Blok*, 88 U.S.App.D.C. 326, 188 F.2d 1019 (1951), is misplaced. The existence of Part 643 of the Postal Manual distinguishes this case from *Blok. See Donato* at 924 n. 4.

1. We are dealing here only with the seizure of the fruits of a postal crime connected with Bunkers' performance of her employment at the post office. We express no view or opinion upon the reasonableness of a search of a postal employee's employment connected locker for the fruits of a crime not work connected.

2. *Donato* is pre-*Katz*; nevertheless the force of its rationale of regulatory leave on the part of postal authorities to search the mint employee's work connected locker is not restricted nor eroded by the reasonable expectancy of privacy test under *Katz*. In fact, we believe the thrust of the *Donato* rationale to be enhanced by *Katz. See United States v. Magana*, 512 F.2d 1169 (9th Cir. 1975), for a lack of reasonable expectancy of privacy in a residential driveway.

The government relies on the work related element of the crime rationale of *United States v. Collins*, 349 F.2d 863 (2d Cir. 1965), *cert. denied*, 383 U.S. 960, 86 S.Ct. 1228, 16 L.Ed.2d 303 (1966). *Collins* is also pre-*Katz*. We believe the search of the closed locker area involved in this case is distinguishable from the open space area involved in *Collins*.

Furthermore, we believe that Bunkers' voluntary entrance into postal service employment and her acceptance and use of the locker subject to the regulatory leave of inspection and search and the labor union's contractual rights of search upon reasonable suspicion of criminal activity amount to an effective relinquishment of Bunkers' Fourth Amendment immunity in her work connected use of the locker. *See Knopf, Inc. v. Colby*, 509 F.2d 1362 at 1370 (4th Cir.), *review denied*, 421 U.S. 992, 95 S.Ct. 1999, 44 L.Ed.2d 482 (1975), for an effective relinquishment of First Amendment rights in work connected information.

The judgment of conviction and sentence is affirmed.

Affirmed.