**Richard Neal SCHOWENGERDT, Plaintiff-Appellant,**

**v.**

**GENERAL DYNAMICS CORPORATION; C.W. Kessel; K.D. Tillotson; Carl W. Jensen; Richard S. Day; and John Lehman, Secretary of the Navy, Defendants-Appellees.**

**No. 84–6231.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 6, 1986.

Decided July 30, 1987.

Carl B. Pearlston, Jr., Torrence, Cal., for plaintiff-appellant.

Stephen E. O'Neal and Nancy P. McClelland, Los Angeles, Cal., for defendants-appellees.

Before FLETCHER, NELSON and HALL, Circuit Judges.

FLETCHER, Circuit Judge:

Schowengerdt appeals the dismissal of his complaint against General Dynamics, a General Dynamics security employee, the Secretary of the Navy, and various Navy personnel for failure to state a claim. We affirm in part, reverse in part, and remand for further proceedings.

## I. BACKGROUND

Schowengerdt seeks declaratory and injunctive relief and money damages against General Dynamics and C.W. Kessel, a General Dynamics security investigator ("private defendants"), Secretary of the Navy John Lehman and Navy personnel Carl Jensen, K.D. Tillotson, and Richard Day ("federal defendants"). Jurisdiction is invoked under, *inter alia,* 28 U.S.C. § 1331, for claims arising "under the First, Fourth, Fifth, Sixth, and Ninth Amendments to the Constitution, Title 18 U.S.C. Sections 1385, 1702, and 2510–20, and Title 42 U.S.C. Section 1985(3)." The complaint specifically alleges violations of Schowengerdt's rights to privacy, to freedom of association and

speech, and to freedom from unreasonable searches and seizures. We read it also as alleging a conspiracy among all defendants to violate those rights.[1] In addition, the first cause of action also alleges that defendants violated Privacy Act regulations, while the second and third causes of actions allege pendant state-law invasion-of-privacy and trespass claims against the private defendants.

Schowengerdt was employed by the Department of the Navy in a Civil Service engineering position at a Naval Industrial Reserve plant in Pomona, California. He was also a Chief Warrant Officer in the Naval Reserve. General Dynamics provided security services for the plant and employed Kessel as a Security Investigator. The complaint alleges Kessel acted on behalf of and as an agent for, the Navy. Tillotson was Executive Officer and Acting Naval Plant Representative at the plant. Carl Jensen was a special agent for the Naval Investigative Service and Richard Day was Chief of Security at a Naval Engineering Station at Port Hueneme, California.

On August 9, 1982, Kessel entered Schowengerdt's locked office, searched his locked desk and credenza, and seized personal photographs and correspondence that involved sexual matters. On the following day, Kessel and Navy employees Tillotson and Jensen conducted a second search and seized similar items. These searches were carried out without a warrant. Schowengerdt contends that they were not authorized by Naval regulations.

Tillotson and Jensen informed the Postal Service that Schowengerdt was receiving and sending pornographic materials through the mails. They also informed the Naval Reserve that Schowengerdt was involved in sodomy and homosexual activities. Following administrative discharge proceedings, and review by the Secretary of the Navy, Schowengerdt was discharged from the Naval Reserve. During the course of the discharge proceedings, Lehman sent a letter by regular mail to Schowengerdt's home, stating that Schowengerdt was being considered for discharge from the Naval Reserve because of homosexual and bisexual activities. The letter was intercepted and read by Schowengerdt's family.

Approximately five months after the search, Schowengerdt resigned from the Civil Service and took a job in private industry. Schowengerdt alleges that an adverse comment made in a security questionnaire completed by Defendant Day caused his security clearance not to be transferred to his new employer and to be withheld for a period of sixteen months.

The complaint alleges that these acts were an abuse of authority by the defendants and that the search was not authorized by government regulations. It is claimed that the defendants' actions adversely affected Schowengerdt's career, future employment opportunities, reputation and familial harmony, causing him mental anguish, anxiety, insomnia, and emotional distress. The complaint states that "[a]ll Defendants, other than GENERAL DYNAMICS and C.W. KESSEL, are sued in their official governmental capacity."

The private and the federal defendants filed separate motions to dismiss the complaint. The district judge dismissed the constitutional claims because of his finding that Schowengerdt failed to allege facts that established a reasonable expectation of privacy in his desk. The pendant state claims were dismissed for lack of jurisdiction. The district court refused to review Schowengerdt's claim relating to his then pending military discharge because it found that the available administrative remedies had not yet been exhausted. Finally, the court held that Schowengerdt failed to allege facts sufficient to state a claim under 42 U.S.C. § 1985(3); the court did not specifically address Schowengerdt's other statutory claims, but rather simply dismissed all causes of action.

## II. STANDARD OF REVIEW

Whether a complaint should be dismissed for failure to state a claim pursuant to

---

1. The complaint reads in part: "Plaintiff alleges that Defendants were motivated to conspiratorial action against Plaintiff because of various past differences...."

Fed.R.Civ.P. 12(b)(6) is a question of law subject to *de novo* review. *Western Reserve Oil & Gas Co. v. New*, 765 F.2d 1428, 1430 (9th Cir.1985), *cert. denied*, 474 U.S. 1056, 106 S.Ct. 795, 88 L.Ed.2d 773 (1986). We restrict our review to the contents of the complaint, accepting the material factual allegations as true and construing them in the light most favorable to the appellant. *Id.* The test we apply is generous to the plaintiff: dismissal for failure to state a claim is improper unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957), *quoted in Gibson v. United States*, 781 F.2d 1334, 1337 (9th Cir.1986), *cert. denied*, — U.S. —, 107 S.Ct. 928, 93 L.Ed.2d 979 (1987).

## III. DISCUSSION

### A. *Constitutional Claims for Damages*

In *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court "established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right." *Carlson v. Green*, 446 U.S. 14, 18, 100 S.Ct. 1468, 1471, 64 L.Ed.2d 15 (1980). The

statutory basis for "*Bivens*" jurisdiction is 28 U.S.C. § 1331.[2] *See Bush v. Lucas*, 462 U.S. 367, 374, 103 S.Ct. 2404, 2409, 76 L.Ed.2d 648 (1983); *Butz v. Economou*, 438 U.S. 478, 486, 98 S.Ct. 2894, 2900, 57 L.Ed.2d 895 (1978). The Supreme Court has specifically approved *Bivens* actions for violations of the Fourth Amendment, *Bivens*, 403 U.S. at 397, 91 S.Ct. at 2005, the Fifth Amendment, *Davis v. Passman*, 442 U.S. 228, 248–49, 99 S.Ct. 2264, 2278–79, 60 L.Ed.2d 846 (1979), and the Eighth Amendment, *Carlson*, 446 U.S. at 19, 100 S.Ct. at 1472. This court has extended the reach of *Bivens* to alleged violations of the First Amendment. *Gibson*, 781 F.2d at 1342.

■ A *Bivens* cause of action may be defeated if "special factors counsel[ ] hesitation in the absence of affirmative action by Congress," *Bivens*, 403 U.S. at 396, 91 S.Ct. at 2004; *Carlson*, 446 U.S. at 18, 100 S.Ct. at 1471, or if "Congress has provided an alternative remedy which it explicitly declared to be a *substitute* for recovery directly under the Constitution and viewed as equally effective." *Id.* at 18–19, 100 S.Ct. at 1471 (citing *Bivens*, 403 U.S. at 397, 91 S.Ct. at 2005).

■ Schowengerdt's complaint invokes 28 U.S.C. § 1331 as the source of district court jurisdiction and alleges constitutional violations by federal agents.[3] We examine

---

**2.** 28 U.S.C. § 1331 gives the district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

**3.** The "private" defendants, Kessel and General Dynamics, argue that Schowengerdt's complaint is deficient because it fails to plead that they were federal officers acting under federal law. We find that Schowengerdt's pleading is adequate. First, it states that Kessel was an "agent" for the Navy and that General Dynamics "provided security services on behalf of" the Navy. Thus, the complaint sufficiently alleges that Kessel and General Dynamics were federal actors. Second, the complaint alleges that Kessel jointly participated with the federal defendants in searching Schowengerdt's office and seizing his property. Such joint participation "would establish both state action and action under color of state law." *Howerton v. Gabica*, 708 F.2d 380, 382 n. 5 (9th Cir.1983). The term "state" as used here encompasses federal action

taken under the color of federal law. *See Ginn v. Mathews*, 533 F.2d 477, 480 n. 4 (9th Cir. 1976); *Reuber v. United States*, 750 F.2d 1039, 1057 (D.C.Cir.1984); *Dobyns v. E–Systems, Inc.*, 667 F.2d 1219, 1220 n. 1 (5th Cir.1982).

Schowengerdt's complaint with respect to the federal defendants is more problematic. He asserts that he is suing them in their "official governmental capacity." Typically actions against federal officers in their official capacity are, in reality, suits against the United States and as such are barred by the doctrine of sovereign immunity. *Chilicky v. Schweiker*, 796 F.2d 1131, 1137 n. 7 (9th Cir.1986); *Gilbert v. DaGrossa*, 756 F.2d 1455, 1458–59 (9th Cir.1985). The major thrust of Schowengerdt's claim, however, is that federal officials committed unconstitutional acts. As we recently noted, "when a federal official commits an unconstitutional act, he is necessarily acting outside his official capacity." *United States v. Yakima Tribal Court*, 806 F.2d 853, 859 (9th Cir.1986)(amending 794 F.2d 1402)(citing *Larson v. Domestic & Foreign*

it to determine whether Schowengerdt might be able to prove under the allegations of his complaint some set of facts entitling him to relief, having in mind that his claim might be defeated by the existence of "special factors" or by an alternative remedy explicitly provided by Congress.

We take the district court's conclusion that Schowengerdt had no reasonable expectation of privacy in his desk as a determination by the court that it was factually impossible for Schowengerdt to prove the existence of a constitutional violation. We examine first whether facts could be proved that support Schowengerdt's claim that his constitutional rights were violated and, second, whether, in this case, there exist special factors that nonetheless would preclude recovery under *Bivens*.[4]

### 1. *The Existence of Constitutional Violations*

■ The district court ruled that Schowengerdt could not have had a reasonable expectation of privacy in his desk primarily because the desk was the property of his employer.[5] Fourth Amendment privacy interests do not, however, turn on property interests. That notion was put to rest by the Supreme Court in *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). In holding that protection against unreasonable searches and seizures guaranteed by the Fourth Amendment depends upon the existence of a "reasonable expectation of freedom from gov-

ernmental intrusion," the Court rejected the contention that those who seek to invoke Fourth Amendment protections must have a property right in the area searched. *Mancusi v. DeForte*, 392 U.S. 364, 368, 88 S.Ct. 2120, 2124, 20 L.Ed.2d 1154 (1968) (citing *Katz*, 389 U.S. at 352, 88 S.Ct. at 511).

The reasonableness of a government employee's expectation of privacy in his workplace was recently explored by the Supreme Court in *O'Connor v. Ortega*, —— U.S. ——, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987). In *Ortega*, the desk and files of Doctor Ortega, a state employee who was on administrative leave during an investigation into charges of work-related improprieties, were searched by a hospital investigatory team; during the course of the search, several personal items were seized. *Id.* at 1495–96. Ortega brought an action under 42 U.S.C. § 1983 against several hospital administrators alleging that the search violated the Fourth Amendment. *Id.* at 1496. This court, reversing a grant of summary judgment to the government supervisors, held that Ortega's expectation of privacy was reasonable and that the search and seizure violated his Fourth Amendment rights. *Ortega v. O'Connor*, 764 F.2d 703 (9th Cir.1985), *rev'd*, —— U.S. ——, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987). A majority of the Supreme Court found that it was error for this court to reach the issue of whether the search in *Ortega* violated the Fourth Amendment, *see* 107 S.Ct.

---

*Commerce Corp.,* 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949)). Where constitutional violations are alleged, the doctrine of sovereign immunity may not be invoked, but the claim is against the official in his individual, not his official capacity. *Yakima Tribal Court,* 806 F.2d at 859. Thus, in essence Schowengerdt's complaint is self-contradictory; it ostensibly sues officials in their official capacity for acts which, by definition, are actions by officials *outside* their official capacity. On remand, Schowengerdt should be given an opportunity to amend his complaint so as to remove this technical defect and conform his pleadings to the substance of his allegations.

**4.** We note that Congress has not "provided an alternative remedy [for Schowengerdt's alleged injuries] which it explicitly declared to be a *substitute* for recovery directly under the Consti-

tution and viewed as equally effective." *Carlson v. Green,* 446 U.S. 14, 18–19, 100 S.Ct. 1468, 1471, 64 L.Ed.2d 15 (1980).

**5.** The district court found that the complaint failed to allege, and that Schowengerdt would not be able to allege, "any claims against any and all of the named defendants for their actions in removing certain materials from a government owned desk in a government office. [Schowengerdt] has failed to allege or establish that he had any reasonable expectation of privacy in the desk in relation to the possibility of his supervisors entering the desk as part of an investigation into his job performance." *Schowengerdt v. General Dynamics,* No. CV 83–8007–AAH at 2 (C.D.Cal. July 20, 1984) (unpublished order and judgment of dismissal).

at 1504 (plurality opinion); *id.* at 1506 (Scalia, J., concurring in the judgment), but the Court was unanimous in finding that Ortega had a reasonable expectation of privacy in his desk and filing cabinets. *See id.* at 1499 (plurality opinion); *id.* at 1506 (Scalia, J., concurring in the judgment); *id* at 1510 (Blackmun, J., dissenting).

Although a majority of the *Ortega* Court did not reach consensus as to what determines whether an employee's expectation of privacy is reasonable, sufficient guidance was provided to allow us to conclude that, in this case, the district court erred in finding that under no circumstances could Schowengerdt have a reasonable expectation of privacy in his desk and credenza. All members of the *Ortega* Court agreed that "[i]ndividuals do not lose Fourth Amendment rights merely because they work for the government." [6] *Id.* at 1498 (plurality opinion); *id.* at 1508 (Blackmun, J., dissenting) (quoting plurality opinion); *id.* at 1505 (Scalia, J., concurring in the judgment)("There is no reason why this determination that a legitimate expectation of privacy exists should be affected by the fact that the government, rather than a private entity, is the employer."). Eight justices agreed that some expectations of privacy held by employees may be unreasonable due to the "operational realities of the workplace." [7] *Id.* at 1498 (plurality opinion); *id.* at 1508 (Blackmun, J., dissenting). Justice O'Connor, writing for four justices and announcing the judgment of the court, thought that the fact that an office is open to fellow employees is an "operational reality" that could defeat an expectation of privacy in that office. *See id.* at 1498 (plurality opinion). Five justices, however, disagreed and found that "[c]onstitutional protection against *unrea-*

*sonable* searches by the government does not disappear merely because the government has the right to make reasonable intrusions in its capacity as employer." *Id.* at 1505 (Scalia, J., concurring in the judgment); *id.* at 1509 (Blackmun, J., dissenting)(quoting Justice Scalia). Justice O'Connor also opined that "[p]ublic employees' expectations of privacy ... may be reduced by virtue of actual office practices and procedures, or by legitimate regulation." *Id.* at 1498 (plurality opinion). The five justices who did not join in Justice O'Connor's opinion neither embraced nor rejected this statement. Pre-*Ortega* law, however, in this and other circuits, supports it.

In *United States v. Bunkers,* 521 F.2d 1217 (9th Cir.), *cert. denied,* 423 U.S. 989, 96 S.Ct. 400, 46 L.Ed.2d 307 (1975), this Court upheld the search of a postal worker's locker by postal inspectors after the worker had been observed taking C.O.D. packages from her work station to the women's locker room. Because published regulations made clear that the lockers were subject to search and Bunkers' union also retained the right to conduct locker searches upon suspicion of criminal activity, the court found "an effective relinquishment of Bunkers' Fourth Amendment immunity in her work connected use of the locker." *Id.* at 1221.

The *Bunkers* court relied on search-authorizing regulations in its case to distinguish an earlier case, *United States v. Blok,* 188 F.2d 1019 (D.C. Cir.1951). *Bunkers,* 521 F.2d at 1220. In *Blok,* the court found the search of a government employee's desk unreasonable. The employee had been arrested on suspicion of petty larceny, and her supervisors had consented to a search of her desk. The court found that

**6.** The *Ortega* Court rejected the Solicitor General's and the hospital administrators' argument that "public employees can never have a reasonable expectation of privacy in their place of work." 107 S.Ct. at 1498 (plurality opinion).

**7.** Justice Scalia disagreed that the fact that the searcher is also the employer is relevant in determining whether an expectation of privacy is reasonable. 107 S.Ct. at 1505. He would hold "that the offices of government employees, and *a fortiori* the drawers and files within those

offices, are covered by the Fourth Amendment.... [unless] the office is subject to unrestricted public access, so that it is 'expose[d] to the public' and therefore 'not a subject of Fourth Amendment protection.'" 107 S.Ct. at 1505–06 (quoting *Katz v. United States,* 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967)). To Justice Scalia, the status of the searcher as employer becomes relevant in determining whether, given a reasonable expectation of privacy, a search is nevertheless reasonable. *Id.* at 1506.

Blok's exclusive use of the desk made search for evidence of petty larceny unreasonable; her supervisors did not have the authority to consent to the search because they, themselves, were not empowered to conduct the search. Although the *Blok* court thought that superiors might reasonably search for "official property needed for official use," 188 F.2d at 1021, where government property was not the object of the search, a different rule applied:

> In the absence of a valid regulation to the contrary appellee was entitled to, and did, keep private property of a personal sort in her desk. Her superiors could not reasonably search the desk for her purse, her personal letters, or anything else that did not belong to the government and had no connection with the work of the office.

*Id.* (emphasis added).

The Third Circuit has relied on the reasoning of *Bunkers* to find workplace searches illegal under the Fourth Amendment. In *United States v. Speights*, 557 F.2d 362 (3d Cir.1977), a police sergeant broke into and searched a police officer's locker. Noting that *Bunkers* and other relevant cases "all relied on specific regulations and practices in finding that an expectation of privacy was not reasonable," *id.* at 365, the *Speights* court focused on the absence of police regulations or practices that would have "alert[ed] an officer to expect unconsented locker searches." *Id.* Because the police department had not demonstrated the existence of a practice of opening lockers secured with private locks, Speights' expectation of privacy in his locker was reasonable. *Id.* at 364. Similarly, in *Gillard v. Schmidt*, 579 F.2d 825, 828 (3d Cir.1978), the Third Circuit found that "a [school] guidance counselor, charged with maintaining sensitive student records, in the absence of an accepted practice or regulation to the contrary, enjoys a reason-

able expectation of privacy in his school desk."

■ We conclude that Schowengerdt would enjoy a reasonable expectation of privacy in areas given over to his exclusive use, unless he was on notice from his employer that searches of the type to which he was subjected might occur from time to time for work-related purposes.[8]

Schowengerdt alleged that there were no regulations providing for searches of employees' office furnishings. It was therefore error for the district court to dismiss his complaint based on a finding that Schowengerdt could have no reasonable expectation of privacy in his desk. On remand both Schowengerdt and the government should be given the opportunity to develop facts relevant to the existence and scope of policies and practices or regulations relating to searches at the Naval facility.

■ If it is found that Schowengerdt had a reasonable expectation of privacy, under *Ortega* a warrantless search of his office nevertheless could be legal if the search was both work-related—that is, carried out to retrieve the employer's property or to investigate work-related misconduct—and "reasonable" under the circumstances. *Ortega*, 107 S.Ct. at 1500–02 (plurality opinion); *id.* at 1506 (Scalia, J., concurring in the judgment). In order to be "reasonable,"

> both the inception and the scope of the intrusion must be reasonable[.]

> . . . . .

> Ordinarily, a search of an employee's office by a supervisor will be "justified at its inception" when there are reasonable grounds for suspecting that the search will turn up evidence that the employee is guilty of work-related mis-

---

**8.** A majority of the *Ortega* court agreed that under some circumstances a government office is "so open ... to the public that no expectation of privacy is reasonable." 107 S.Ct. at 1498 (plurality opinion); *id* at 1506 (Scalia, J., concurring in the judgment)(stating that where an "office is subject to unrestricted public access, so that it is 'expose[d] to the public' [it is] 'not a

subject of Fourth Amendment protection' ")(quoting *Katz v. United States,* 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967)). Because Schowengerdt's office was located in a security facility, it was obviously not so open to the public as to render his expectation of privacy unreasonable on this basis.

conduct, or that the search is necessary for a noninvestigatory work-related purpose such as to retrieve a needed file.... The search will be permissible in its scope when "the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of ... the nature of the [misconduct]."

*Id.* at 1502–03 (plurality opinion)(quoting *New Jersey v. T.L.O.*, 469 U.S. 325, 341, 342, 105 S.Ct. 733, 743, 744, 83 L.Ed.2d 720 (1985)).

Schowengerdt alleges that his office was searched, not to retrieve government property, but rather to investigate his sexual activities. It is unclear whether information concerning these matters could be a legitimate concern of his employer. We note that "*Thorne v. El Segundo (Thorne I)*, 726 F.2d 459 (9th Cir.1983), *cert. denied*, 469 U.S. 979, 105 S.Ct. 380, 83 L.Ed.2d 315 (1984), established in this circuit that the Constitution prohibits unregulated, unrestrained employer inquiries into personal sexual matters that have no bearing on job performance." *Thorne v. El Segundo (Thorne II)*, 802 F.2d 1131, 1139 (9th Cir.1986). In *Thorne I*, we held that the government employer, a city police department, violated Thorne's constitutionally protected right to privacy when it required her to reveal personal sexual information. *Id.* at 468–70. *Thorne I* narrowly circumscribes constitutionally permissible inquiry:

> [T]he [government] must show that its inquiry into appellant's sex life was justified by the legitimate interests of the [government employer], that the inquiry was narrowly tailored to meet those le-

gitimate interests, and that the [employer's] use of the information ... was proper in light of the [government's] interests.

*Id.* at 469.

▮ Because Schowengerdt had a constitutional right to be free from unnecessary, overbroad, or unregulated employer investigations into his sexual practices, the search of his desk and credenza to find and seize materials relating to such matters would be reasonable only if relevant to his job as a naval engineer.[9] Furthermore, the scope of the inquiry must be no broader than necessary. *Ortega*, 107 S.Ct. at 1502–03. If less intrusive methods were feasible,[10] or if the depth of the inquiry or extent of the seizure exceeded that necessary for the government's legitimate purposes,[11] such as its interest in security, the search would be unreasonable and Schowengerdt's Fourth Amendment rights and right to privacy would have been violated.

▮ Both the work-relatedness of the searches and seizures that could obviate the warrant requirement and the reasonableness of the searches under the circumstances are factual matters that must be developed on remand. Because it does not appear "beyond doubt that [Schowengerdt] can prove no set of facts in support of his claim which would entitle him to relief," *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957), the district court erred in dismissing the complaint for failure to state a claim. If, on remand, Schowengerdt is able to establish his reasonable expectation of privacy, and demonstrate that either a warrant was required or that the searches or seizures

---

**9.** *See also United States v. Nasser*, 476 F.2d 1111, 1123 (7th Cir.1973) ("We believe this element of work-relatedness is where the trespass line must be drawn."); *United States v. Blok*, 188 F.2d 1019, 1021 (D.C.Cir.1951) (superiors could not search desk for items "that did not belong to the government and had no connection with the work of the office"). *Cf. United States v. Bunkers*, 521 F.2d 1217, 1220 n. 1 (9th Cir.), *cert. denied*, 423 U.S. 989, 96 S.Ct. 400, 46 L.Ed.2d 307 (1975)("We express no view ... upon the reasonableness of a [lockersearch] for the fruits of a crime not work connected").

**10.** It might be less objectionable, for example, to question an employee directly than it would be to search his private papers without his knowledge.

**11.** Schowengerdt alleges that the initial search of his desk was undertaken for the express purpose of finding the items relating to his sexual activities. If in fact those items were discovered, for example, during a routine administrative search for classified documents pursuant to government policy, we note that seizure of those items and the second search and seizure would still have to satisfy the *Ortega* and *Thorne* limitations.

were unreasonable in scope, he may pursue his claim for damages based on violations of his constitutional right to be free from unwarranted searches and seizures, *Bivens*, 403 U.S. at 397, 91 S.Ct. at 2005; his right to privacy, *see Kotarski v. Cooper*, 799 F.2d 1342, 1345 (9th Cir.1986); *Slayton v. Willingham*, 726 F.2d 631, 635 (10th Cir.1984)(per curiam); *Thorne I*, 726 F.2d at 471; and his First Amendment right to freedom of association, *see id.*[12]

## 2. *Special Factors Counselling Hesitation*

### *Private Status as a Special Factor*

The "private" defendants, Kessel and General Dynamics, argue that a *Bivens* remedy is not available against them since they are not government employees even though they may be "federal actors." We disagree that the private status of a federal actor is a "special factor" that would preclude a *Bivens* action.

In *Ginn v. Mathews*, 533 F.2d 477 (9th Cir.1976), we held that a private corporation could be liable for constitutional violations. In *Ginn*, terminated and demoted employees of the Economic Opportunity Council of San Francisco (EOC), a private corporation that operated the federal Headstart Program in San Francisco, sought damages from their employer for violations of their First, Fifth, and Fourteenth Amendment rights. District court jurisdiction was invoked under, *inter alia*, 28 U.S.C. § 1331 and 42 U.S.C. § 1983. The plaintiffs in *Ginn* claimed that EOC was "a de facto arm of the state and federal governments and its action constituted 'state action' and thus was subject to federal constitutional limitations." *Ginn*, 533 F.2d at 477–78.

■ Plaintiffs brought both a section 1983 action (for constitutional violations under color of state law) and a *Bivens* action (for constitutional violations under color of federal law).[13] One of the issues on appeal from dismissal of the employee's claims was "whether the district court erred in ruling that it lacked subject matter jurisdiction because defendant EOC was a private corporation and therefore not subject to the due process clauses of the Fifth and Fourteenth Amendments." [14] *Id.* at 478. The *Ginn* court, fully cognizant of EOC's argument based on its status as a private party, reversed the district court, finding that the employees had stated a claim upon which relief could be granted.[15] *Id.* at 481.

■ Thus, *Ginn* established in this circuit that the private status of the defend-

**12.** The district court did not reach the merits of these claims—beyond finding that Schowengerdt had no reasonable expectation of privacy—and we express no opinion on the merits of Schowengerdt's claims here. *See Kotarski*, 799 F.2d at 1345 n. 4.

**13.** Although the *Ginn* court did not use the words, "*Bivens* action" the court made clear that it was "consider[ing] the question of 'state' action in its broad sense as involving both state and federal participation." *Id.* at 480 n. 4. The *Ginn* plaintiffs, invoking jurisdiction under section 1331, sought damages for violations of their constitutional rights by federal actors. Such an action is, by definition, a *Bivens* action.

The fact that the *Ginn* opinion did not expressly refer to the case as a *Bivens* action seems to have resulted in its being overlooked on the issue of private-party liability under *Bivens*. *See, e.g., Fonda v. Gray*, 707 F.2d 435, 437 (9th Cir.1983)(stating that "[w]e are aware of no case ... which has decided that private parties may be liable in a *Bivens* action," but "assum[ing], without deciding, that private parties may be liable ... under principles similar to

those developed under 42 U.S.C. § 1983"); *Reuber v. United States*, 750 F.2d 1039, 1055 n. 21 (D.C.Cir.1984)(citing cases that have reached or discussed private parties under *Bivens* and omitting *Ginn*). Despite this neglect, *Ginn* represents the law in this circuit.

**14.** Even if *Bivens* claims did not lie against private parties, dismissal for lack of *subject-matter* jurisdiction would be improper. *See Reuber*, 750 F.2d at 1053–54. The proper form of dismissal would be for failure to state a claim upon which relief may be granted. *See id.* at 1054. Although the district court in *Ginn* apparently dismissed for lack of subject-matter jurisdiction, our holding was that "the complaint states a claim upon which relief may be granted," *Ginn*, 533 F.2d at 481, and thus the decision is not limited to the issue of subject-matter jurisdiction.

**15.** The second issue in *Ginn* was whether the EOC's activities constituted "state" action—referring to both state and federal action—and the court concluded that they did. *Ginn*, 553 F.2d at 481.

ant will not serve to defeat a *Bivens* claim, provided that the defendant engaged in federal action. Other circuits are in accord. A divided panel of the D.C. Circuit recently held that "private status ...[,] even if deemed a special factor, is not alone sufficient to counsel hesitation in implying a damages remedy when the private party defendants jointly participate with the government to a sufficient extent to be characterized as federal actors...." *Reuber v. United States,* 750 F.2d 1039, 1058 (D.C.Cir.1984)(opinion of Wald, J.); *id* at 1063 (Bork, J., concurring in part)(stating that "a private person whose conduct is allegedly instigated and directed by federal officers should be treated as a federal agent" and "be subject to *Bivens* liabili-

ty"). The Fifth and Sixth Circuits are in accord. *See Dobyns v. E–Systems, Inc.,* 667 F.2d 1219 (5th Cir.1982); *Yiamouyiannis v. Chemical Abstracts Serv.,* 521 F.2d 1392 (6th Cir.1975)(per curiam).[16]

■ A second aspect of the private defendants contention is that their action was not "federal action." The existence of governmental action is a question of fact. *See Howerton v. Gabica,* 708 F.2d 380, 383 (9th Cir.1983). Because, at this stage of the case, we must accept the plaintiff's factual allegations as true, we do not look beyond the complaint. Schowengerdt's complaint alleges facts that, if true, support a finding of government action,[17] but the final deter-

---

**16.** The First Circuit, in *Fletcher v. Rhode Island Hosp. Trust Bank,* 496 F.2d 927, 932 n. 8 (1st Cir.), *cert. denied,* 419 U.S. 1001, 95 S.Ct. 320, 42 L.Ed.2d 277 (1974) found, without explanation, that there is no cause of action against private parties acting under color of federal law. However, in a subsequent case the First Circuit analyzed a constitutional claim against a private corporation alleged to be a federal actor and did not rely on *Fletcher;* rather the court seemed to assume that a cause of action would lie if the private corporation were in fact a federal actor. *See Gerena v. Puerto Rico Legal Servs., Inc.,* 697 F.2d 447, 449 (1st Cir.1983). The *Gerena* court found that the defendants were not federal actors and held that the plaintiff's complaint had been properly dismissed on that basis. *Id.* at 452.

In *Wagner v. Metropolitan Nashville Airport Auth.,* 772 F.2d 227 (6th Cir.1985) the district court concluded that the plaintiff's complaint was insufficient to raise a *Bivens* claim because it failed to allege that the defendants were federal agents. In affirming the district court's decision, the Sixth Circuit stated that the "failure to allege that defendant ... was a federal *employee* renders the pleading insufficient under *Bivens."* *Id.* at 230 (emphasis added). If the *Wagner* court intended to limit *Bivens* liability to federal employees, it is in conflict with the Sixth Circuit's earlier decision in *Yiamouyiannis.* Whatever the *Wagner* majority's intent, we agree with Judge Martin's concurring opinion, in which he stated: "I do not believe that Wagner had to allege that Myers was a federal employee.... [He] only had to allege that Myers was a federal agent.... Because Wagner failed to allege that Myers was a federal agent or federal employee, this distinction does not affect the result in this case." *Id.* at 231 n. 1 (Martin, J., concurring).

**17.** Many tests or factors have been articulated for use in determining the existence of sufficient state action. *See Howerton v. Gabica,* 708 F.2d 380, 383 (9th Cir.1983)(listing tests and

citing cases). At least two of these seem applicable. First, Schowengerdt alleges that the second search of his office was carried out by Kessel and two federal employees. Under the "joint action" test, a private party is acting under color of state (or federal) law if "he is a willful participant in joint action with the [government] or its agents." *Dennis v. Sparks,* 449 U.S. 24, 27, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980); *Howerton,* 708 F.2d at 383. "[W]hen the claim is that the private parties have jointly participated with a [government] official, ordinarily proof of the joint participation would establish both state action and action under color of state law." *Id.* at 383 n. 5. In *Howerton* we found that police participation in an illegal eviction transformed the landlord's participation into state action. *See id.* at 384. Under *Howerton,* if the second search was as alleged, Kessel's joint participation would clearly be "state action."

Second, under the "public function" test, the Supreme Court has "found state action present in the exercise by a private entity of powers traditionally exclusively reserved to the State." *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 352, 95 S.Ct. 449, 454, 42 L.Ed.2d 477 (1974); *see also Fidelity Fin. Corp. v. Federal Home Loan Bank,* 792 F.2d 1432, 1435 (9th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 949, 93 L.Ed.2d 998 (1987). It is alleged that the private defendants provided security for the naval facility. That searches were conducted on behalf of the government "indicate[s] the assumption of a police activity which is clearly a public function." *Dobyns v. E–Systems, Inc.,* 667 F.2d 1219, 1226 (5th Cir.1982); *see also Lusby v. T.G. & Y. Stores, Inc.,* 749 F.2d 1423, 1430 (10th Cir.1984)(finding that where local police allowed store security guard "to substitute his judgment for that of the police", "[s]uch cooperative activity between the police department and a private party is sufficient to make [the guard] a party acting under color of state

mination of this issue must be made by the district court on remand. *See Reuber*, 750 F.2d at 1054–55. If the district court finds the governmental action requirement satisfied, defendants Kessel and General Dynamics may not rely on their private-party status as a basis for dismissal.

*Alternative Regulatory Scheme as a Special Factor*

 In *Bush v. Lucas*, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), the Supreme Court held that the existence of "an elaborate, comprehensive scheme that encompasses substantive provisions forbidding arbitrary action by supervisors and procedures—administrative and judicial— by which improper action may be redressed," *id.* at 385, 103 S.Ct. at 2414, was a "special factor" that made a *Bivens* remedy unavailable to a federal civil servant who had statutory redress for his illegal demotion claim. Schowengerdt, a federal civil servant, can press a *Bivens* action only if the constitutional violations he claims cannot be adequately addressed under the regulatory scheme that governs the relationship between the government and its employees. There are no statutory remedies for illegal searches and seizures carried out by the government against its employees. 5 U.S.C. sections 7513, 7701, and 7703 provide substantial procedural protections for federal employees against whom adverse personnel actions are taken. The covered actions include removal, suspension for more than fourteen days, reduction in grade or pay, and furlough of thirty days or less. 5 U.S.C. § 7512(1)–(5). But, as the Supreme Court noted in *Bush*, a

warrantless search directed at an employee is not an "adverse action" covered by the statutory scheme. *See* 462 U.S. at 385 n. 28, 103 S.Ct. at 2415 n. 28.

In addition, certain personnel practices against federal civil servants are prohibited under 5 U.S.C. section 2302. Procedures for investigating and remedying such practices are provided for in 5 U.S.C. sections 1206, 1207, and 1208. However, section 2302 prohibits only practices respecting the exercise of authority over a "personnel action." 5 U.S.C. § 2302(b). "Personnel actions," for the purposes of section 2302 are specifically listed. They include, for example, appointments, promotions, transfers, and decisions relating to pay. 5 U.S.C. § 2302(a)(2). Schowengerdt complains of none of these. His wrong stems from the search. As the Supreme Court noted in *Bush*, warrantless searches are not "personnel actions" within the statutory scheme. 462 U.S. at 385 n. 28, 103 S.Ct. at 2415 n. 28. In sum, Congress has not acted to regulate the aspect of government/employee relations at issue in this case, and, thus, the "special factor" present in *Bush* is wholly absent here.

## B. *Statutory Claims*

In addition to his constitutional claims, Schowengerdt alleges violations of several federal statutes. With one possible exception, we conclude that the statutory claims were properly dismissed.

### 1. *18 U.S.C. § 1385*

 Schowengerdt claims that the defendants violated 18 U.S.C. § 1385,[18] the

---

law"), *cert. denied* (as to the private defendants), 474 U.S. 818, 106 S.Ct. 65, 88 L.Ed.2d 53 (1985); *Thorne v. City of El Segundo*, 726 F.2d 459, 471 n. 11 (9th Cir.1983)(finding that private person who administered polygraph exams for police department was a state actor because he acted on behalf of and was paid by the government), *cert. denied*, 469 U.S. 979, 105 S.Ct. 380, 83 L.Ed.2d 315 (1984); *Goichman v. Rheuban Motors, Inc.*, 682 F.2d 1320, 1322 (9th Cir. 1982)("[A] private towing company acting at the behest of a police officer and pursuant to a statutory scheme designed solely to accomplish the state's purpose of enforcing its traffic laws, acts under color of state law...."). *Cf. Del's Big Saver Foods, Inc. v. Carpenter Cook, Inc.*, 795

F.2d 1344, 1346 (7th Cir.1986)("A state cannot avoid its obligations under the due process clause by delegating to private persons the authority to deprive people of their property without due process of law.").

**18.** Section 1385 provides:
> Whoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army or the Air Force as a posse comitatus or otherwise to execute the laws shall be fined not more than $10,000 or imprisoned not more than two years, or both.

Posse Comitatus Act. Because section 1385 by its express terms is inapplicable to Navy involvement in law enforcement, *United States v. Roberts,* 779 F.2d 565, 567 (9th Cir.), *cert. denied,* — U.S. ——, 107 S.Ct. 142, 93 L.Ed.2d 84 (1986), Schowengerdt has no cause of action under the statute.

### 2. *18 U.S.C. § 1702*

■■■ Schowengerdt also claims a violation of 18 U.S.C. § 1702.[19] Even if Schowengerdt has a private right of action under the statute,[20] he has not stated a cause of action for its violation. Section 1702 protects only correspondence in the U.S. mails, that has not been received by the addressee. *See Giraud v. United States,* 348 F.2d 820, 822 (9th Cir.1965), *cert. denied,* 382 U.S. 1015, 86 S.Ct. 627, 15 L.Ed.2d 529 (1966); *see also United States v. Brown,* 425 F.2d 1172, 1174 (9th Cir.1970)(per curiam). The letters, that Schowengerdt claims were seized, were in his possession and, therefore, were either unmailed or already received.

### 3. *18 U.S.C. §§ 2510–2520*

The complaint also alleges violations of 18 U.S.C. §§ 2510–2520, which concern interception of oral and wire communications and authorize private suit for damages. 18 U.S.C. § 2520. Defendants claim that any action under these sections should be dismissed because Schowengerdt has not alleged that any oral or wire communications were intercepted. While they are correct, Schowengerdt, in his memorandum in opposition to the motion to dismiss, does allege facts that indicate violations of these sections. Accordingly, this pleading defect presumably could be cured by amendment.

### 4. *42 U.S.C. § 1985(3)*

■■■ The defendants claim that Schowengerdt cannot state a cause of action under 42 U.S.C. § 1985(3) because he has not alleged racial or other class-based animus. Such animus is a requirement for a cause of action under the statute. *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971); *Mollnow v. Carlton,* 716 F.2d 627, 628 (9th Cir.1983), *cert. denied,* 465 U.S. 1100, 104 S.Ct. 1595, 80 L.Ed.2d 126 (1984). The only class to which the complaint might have reference, one based on sexual preference, does not support a section 1985(3) action. *See De-Santis v. Pacific Tel. & Tel. Co.,* 608 F.2d 327, 332–33 (9th Cir.1979).

### 5. *Privacy Act*

■■■ Schowengerdt alleges that defendant Lehman violated the Privacy Act, 5 U.S.C. § 552a, by mailing to Schowengerdt's home a letter, which was intercepted by members of his family, informing him that he was being considered for discharge from the Naval Reserve due to his sexual activities. 5 U.S.C. § 552a(b) limits the disclosure of federal agency records; § 552a(g)(1) provides a private cause of action against an agency for failing to comply with § 552a(b). The agency is the only proper party to such a suit; the civil remedy provisions do not apply to individual defendants. *See* 5 U.S.C. § 552a(g)(1); *Unt v. Aerospace Corp.,* 765 F.2d 1440, 1447 (9th Cir.1985). Assuming without deciding that the head of an agency sued in his official capacity is a proper defendant,

---

We do not speak to any other statutes that may proscribe Navy involvement, but find only that 18 U.S.C. § 1385 does not.

**19.** Section 1702 provides:

Whoever takes any letter, postal card, or package out of any post office or any authorized depository for mail matter, or from any letter or mail carrier, or which has been in any post office or authorized depository, or in the custody of any letter or mail carrier, before it has been delivered to the person to whom it was directed, with design to obstruct the correspondence, or to pry into the business or secrets of another, or opens, secretes, embezzles, or destroys the same, shall be fined not more than $2,000 or imprisoned not more than five years, or both.

**20.** The defendants claim that there is no private right of action under the statute, and the case law supports them. *Sciolino v. Marine Midland Bank-Western,* 463 F.Supp. 128, 131–34 (W.D.N.Y.1979); *Berlin Democratic Club v. Rumsfeld,* 410 F.Supp. 144, 162 (D.D.C.1976); *Hill v. Sands,* 403 F.Supp. 1368, 1371 (N.D.Ill.1975).

*see Hewitt v. Grabicki,* 794 F.2d 1373, 1377 n. 2 (9th Cir.1986), Schowengerdt has not stated a claim under this section.

The sending of a letter containing information about an individual to that individual is not a "disclosure" within the meaning of the Act. " 'A dissemination of information to a person ... who [was] previously aware of the information is not a disclosure under the Privacy Act.' " *Pellerin v. Veterans Administration,* 790 F.2d 1553, 1556 (11th Cir.1986) (quoting *Federal Deposit Ins. Corp. v. Dye,* 642 F.2d 833, 836 (5th Cir. Unit B 1981)). Furthermore, a letter directed to an employee, informing him about matters that might affect his employment status appears to be a "routine use" authorized under section 552a(b)(3). Thus, sending the letter to Schowengerdt did not violate the Privacy Act; the fact that his family members may have opened and read Schowengerdt's mail is unfortunate, but it cannot transform otherwise legal action into illegal action.

### C. *Claim for Injunctive Relief from Military Discharge*

■ Finally, Schowengerdt seeks injunctive relief from his discharge from the Air Naval Reserve. Although "[m]ilitary discharge decisions are subject to judicial review[,] ... [w]e ordinarily require exhaustion of an agency's remedies before we will review an administrative decision." *Muhammad v. Secretary of the Army,* 770 F.2d 1494, 1495 (9th Cir.1985) (citations omitted). At oral argument, the government stated that Schowengerdt had exhausted his administrative remedies. If this is true, the discharge decision is ripe for review by the district court.[21]

### IV. CONCLUSION

The judgment of the district court, dismissing Schowengerdt's complaint for failure to state a claim is reversed in part, affirmed in part, and remanded for further proceedings in accordance with this opinion.

---

21. If, on the other hand, the district court finds that Schowengerdt has administrative remedies available to him for the type of relief he seeks, *see, e.g.,* 10 U.S.C. §§ 1552, 1553, he must exhaust them unless "(1) ... the remedies do not provide an opportunity for adequate relief; (2) ... [Schowengerdt] will suffer irreparable harm if compelled to seek administrative relief; (3) ... administrative appeal would be futile; or (4) ... substantial constitutional questions are raised." *Muhammad,* 770 F.2d at 1495 (citing *Von Hoffburg v. Alexander,* 615 F.2d 633, 638 (5th Cir.1980)). The factual matters necessary to decide the appropriateness of judicial review of Schowengerdt's discharge obviously must be developed on remand.