**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JERILYN QUON; APRIL FLORIO; JEFF
QUON; STEVE TRUJILLO,
          *Plaintiffs-Appellants,*

v.

ARCH WIRELESS OPERATING
COMPANY, INCORPORATED, a
Delaware corporation; CITY OF
ONTARIO, a municipal corporation;
LLOYD SCHARF, individually and as
Chief of Ontario Police
Department; ONTARIO POLICE
DEPARTMENT; DEBBIE GLENN,
individually and as a Sergeant of
Ontario Police Department,
          *Defendants-Appellees.*

No. 07-55282

D.C. No.
CV-03-00199-SGL
Central District of
California,
Los Angeles

ORDER

Filed January 27, 2009

Before: Harry Pregerson and Kim McLane Wardlaw,
Circuit Judges, and Ronald B. Leighton,* District Judge.

Order;
Concurrence by Judge Wardlaw;
Dissent by Judge Ikuta

---

*The Honorable Ronald B. Leighton, United States District Judge for
the Western District of Washington, sitting by designation.

# ORDER

Judges Pregerson, Wardlaw, and Leighton voted to deny Appellees' petition for panel rehearing. Judges Pregerson and Wardlaw also voted to deny Appellees' petition for rehearing en banc, and Judge Leighton so recommended.

The full court was advised of the petition for rehearing en banc. A judge requested a vote on whether to rehear the matter en banc. The matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc reconsideration. Fed. R. App. P. 35. Judge Bybee was recused.

The petition for rehearing en banc is denied.

---

WARDLAW, Circuit Judge, concurring in the denial of rehearing en banc:

No poet ever interpreted nature as freely as Judge Ikuta interprets the record on this appeal. The dissent is not bound by the facts, even those found by the jury; nor is it confined to the actual fact-driven Fourth Amendment holding. The dissent's lofty views of how the City of Ontario Police Department ("OPD") should have guided the use of its employees' pagers are far removed from the gritty operational reality at the OPD. I write only to correct the seriously flawed underpinnings of the dissent and to demonstrate that our opinion carefully and correctly applied the tests set forth in *O'Connor v. Ortega*, 480 U.S. 709 (1987). That our opinion follows Supreme Court precedent and accords with our sister circuits is obviously why this appeal failed to win the support of a majority of our active judges for rehearing en banc.

## I.

The dissent selectively recites facts to support its disagreement with the outcome of our panel's Fourth Amendment

analysis. For a full recitation of the record evidence, read the opinion. *See Quon v. Arch Wireless Operating Co*., 529 F.3d 892, 895-99 (9th Cir. 2008). Set forth below are the key factual findings that the dissent either mischaracterizes or overlooks entirely.

The record belies the dissent's assertion that the OPD officers were permitted to use the pagers only during SWAT emergencies. Dissent at 1138. Sergeant Jeff Quon ("Quon") and other SWAT team members, who were required to be on call "24/7," had been issued the pagers pursuant to an agreement with the OPD. The agreement to provide the officers' pagers resulted from the OPD's "refusal to pay overtime or stand-by pay to officers who must be available for SWAT call-outs."

Moreover, the record is clear that the City had no official policy governing the use of the pagers. *Quon*, 529 F.3d at 896. At the time it contracted for the pagers, the City had in place a general "Computer Usage, Internet and E-mail Policy" (the "Policy"), which Quon had signed before the City even acquired the pagers. *Id.* However, the Policy does not expressly cover the pagers or text messaging. *Id.* According to Lieutenant Steve Duke ("Lt. Duke"), a Commander with the OPD Administration Bureau, Quon attended a 2002 meeting during which Lt. Duke allegedly informed those in attendance that the pager messages "were considered e-mail, and that those messages would fall under the City's policy as public information and eligible for auditing." *Id.* Quon "vaguely recalled attending" the meeting. *Id.* Yet, he did *not* recall Lt. Duke stating at the meeting that the use of the pagers was governed by the Policy—a fact the dissent fails even to mention. *See id.*

More troubling still is the dissent's failure to consider the OPD's informal—but express and specific—policy and practices that did govern the use of the pagers, or Lt. Duke's role in effecting this policy. By burying these key facts, the dissent

again misrepresents the record. *See* Dissent at 1139-40. Lt. Duke, who was officially in charge of administering the use of the pagers and procuring payment of overage charges, explained the informal policy as follows:

> "[T]he practice was, if there was overage, that the employee would pay for the overage that the City had . . . . [W]e would usually call the employee and say, 'Hey, look, you're over X amount of characters. It comes out to X amount of dollars. Can you write me a check for your overage[?]' "

*Id.* at 897 (alterations in original). Lt. Duke told Quon that it was "not his intent to audit employee's [sic] text messages to see if the overage is due to work related transmissions." *Id.* at 897 (alteration in original). According to Quon, Lt. Duke stated that " 'if you don't want us to read [your messages], pay the overage fee.' " *Id.* As a result of his official position, Lt. Duke's statements carried "a great deal of weight," as the district court found. *Quon v. Arch Wireless Operating Co.*, 445 F. Supp. 2d 1116, 1141 (C.D. Cal. 2006). Because the record evidence showed that Lt. Duke was in charge of the distribution and use of the pagers, the district court and our panel concluded "it was reasonable for Quon to rely on the policy—formal or informal—that Lieutenant Duke established and enforced." *Quon*, 529 F.3d at 907.

The practices of the OPD were consistent with Quon's understanding of the informal policy. Quon exceeded the monthly character limit "three or four times" and paid the City for the overages. *Id.* at 897. Each time, " 'Lieutenant Duke would come and tell [him] that [he] owed X amount of dollars because [he] went over [his] allotted characters,' " and Quon would pay the City for the overages. *Id.* (alterations in original). The City did not review any of Quon's messages in any of these instances. *Id.* The informal policy remained in place until Lt. Duke suddenly let it be known that he was "tired of being a bill collector with guys going over the allot-

ted amount of characters on their text pagers." *Id.* In response, Chief of Police Lloyd Scharf ordered Lt. Duke to " 'request the transcripts of those pagers for auditing purposes.' " *Id.* at 897-98. Lt. Duke obtained and reviewed the transcripts of the messages sent and received by Quon, which revealed that Quon " 'had exceeded his monthly allotted characters by 15,158 characters,' and that many of [the] messages were personal in nature and were often sexually explicit." *Id.* at 898.

The dissent also oversimplifies and misstates the procedural posture of the case. The parties filed numerous rounds of motions for summary judgment. *Id.* Ultimately, as to the Fourth Amendment claims, the district court found that, in light of the OPD's informal policy that the text messages would not be audited, Quon had a reasonable expectation of privacy in his messages. *Quon*, 445 F. Supp. 2d at 1140-43. Our unanimous panel agreed. *Quon*, 529 F.3d at 906 ("We agree with the district court that the Department's informal policy that the text messages would not be audited if he paid the overages rendered Quon's expectation of privacy in those messages reasonable."). The dissent's suggestion that we reversed the district court's holding as to Quon's reasonable expectation of privacy is untrue. Dissent at 1141.

The dissent incomprehensibly ignores the jury portion of the trial as to the purpose of Chief Scharf's search of the pager transmissions. Denying summary judgment, the district court had ruled that a jury would decide "the actual *purpose* or *objective* Chief Scharf sought to achieve in having Lieutenant Duke perform the audit of Quon's pager." *Quon*, 445 F. Supp. 2d at 1144. A jury trial was held, during which Chief Scharf testified that he asked Lt. Duke to audit "the top two [pagers] that were in excess of the 25,000 character[ ] [limit] to determine if [the OPD] needed to add more characters, or — if it was occurring on duty time, were the officers paying for the overages where the city should be, because it's certainly cheaper to add more characters than it is to pay for overages if it was occurring on duty time." By special verdict,

the jury found that Chief Scharf's purpose was to "determine the efficacy of the existing character limits to ensure that officers were not being required to pay for work-related expenses." The jury expressly rejected the alternative possibility—that Chief Scharf's purpose was to uncover misconduct. *See Quon*, 529 F.3d at 899. The dissent's statement that Chief Scharf "sent the matter to internal affairs for an investigation 'to determine if someone was wasting . . . City time not doing work when they should be,' " Dissent at 1141 (alteration in original), is directly contrary to Chief Scharf's testimony and the jury's factual finding, which was not even the subject of an appeal by the City. The City, for reasons of its own, was quite content to have the jury find a legitimate purpose for Chief Scharf's search, and, as any first-year lawyer would agree, we are bound on appeal by the jury's factual determination.

II.

The dissent incorrectly asserts that the opinion "departs" from *O'Connor*, 480 U.S. 709. *Id.* The opinion in fact adheres to *O'Connor*'s holding, explicitly acknowledging that " '[t]he operational realities of the workplace . . . may make *some* employees' expectations of privacy unreasonable,' " and that privacy " 'may be reduced by virtue of actual office practices and procedures, or by legitimate regulation,' " *Quon*, 529 F.3d at 903-04 (alterations in original) (quoting *O'Connor*, 480 U.S. at 717). However, our opinion—unlike the dissent—also recognizes that in *O'Connor*, the Supreme Court mandated a " 'case-by-case' " approach to determining whether an employee has a reasonable expectation of privacy in the workplace. *Quon*, 529 F.3d at 904 (quoting *O'Connor*, 480 U.S. at 718). Further, our opinion follows the Supreme Court's instruction that " 'public employer intrusions on the constitutionally protected privacy interests of government employees . . . should be judged by the standard of reasonableness *under all the circumstances*.' " *Quon*, 529 F.3d at 904 (emphasis added) (quoting *O'Connor*, 480 U.S. at

725-26). Thus, the analysis is necessarily fact-driven, and all the factual circumstances surrounding the search must be considered.

In affirming the district court's holding, we followed the Supreme Court's mandate to evaluate the "operational realities of the workplace." *O'Connor*, 480 U.S. at 717. The dissent's suggestion to the contrary is simply due to its flawed description of the realities of the OPD workplace. By failing to consider all the circumstances of the issuance and use of the pagers for text messaging, the dissent perceives a conflict with *O'Connor* where none in fact exists.

The dissent's concerns regarding the California Public Records Act ("CPRA") similarly lack merit. *See* Cal. Gov't Code § 6253(a). The existence of the CPRA as a consideration is offset by the existence of the informal but express policy and practices governing the use of the pagers by the OPD officers. Moreover, as our panel (and the district court) note, there was "no evidence before the [c]ourt suggesting that CPRA requests to the department are so widespread or frequent as to constitute an open atmosphere so open to fellow employees or the public that no expectation of privacy is reasonable." *Quon*, 529 F.3d at 907 (alteration in original) (internal quotation marks omitted); *see Zaffuto v. City of Hammond*, 308 F.3d 485, 489 (5th Cir. 2002) (holding that, notwithstanding the existence of the public records law, "[a] reasonable juror could conclude . . . that [the plaintiff] expected that his call to his wife would be private, and that that expectation was objectively reasonable"); *see also Yin v. State of Cal.*, 95 F.3d 864, 871 (9th Cir. 1996) ("Although there is little direct case law on point, obviously there are limitations on the state's ability to erode reasonable expectations of privacy by statutory enactments.").

### III.

The dissent distorts our holding as to the scope of the search. We did not adopt a "less intrusive means" test. *See*

Dissent at 1138-39, 1144-46. The "less intrusive means" discussion relates to the jury's finding that Chief Scharf conducted the search for noninvestigatory purposes.

*O'Connor* provides the framework for evaluating the reasonableness of a search in this context, which the dissent does not dispute. *Id.* at 1145. Applying this framework, we first held that the search was reasonable "at its inception" because the officers conducted the search for the work-related purpose of ensuring that "officers were not being required to pay for work-related expenses," as the jury had found below. *Quon*, 529 F.3d at 908. We then turned to the second prong of the *O'Connor* test: determining whether the measures adopted were "reasonably related to the objectives of the search and not excessively intrusive in light of . . . the nature of the [misconduct]." 480 U.S. at 726 (internal quotation marks omitted). Because "the Department opted to review the contents of all the messages, work-related and personal, without the consent of Quon," we held that the search "was excessively intrusive in light of the noninvestigatory object of the search." *Quon*, 529 F.3d at 909. This holding was also based on our conclusion that Quon's "reasonable expectation of privacy in those messages" was not outweighed by the government's interest —again, as found by the jury—in auditing the messages. *Id.*

The dissent incorrectly represents that we held that the search was unreasonable "*because* the city could have used less intrusive means to accomplish the objectives of the search." Dissent at 1144 (emphasis added). Although we cited *Schowengerdt v. General Dynamics Corp.*, 823 F.2d 1328, 1336 (9th Cir. 1987), we did not apply a "less intrusive means" test.[1] *Quon*, 529 F.3d at 908-09; *cf.* Dissent at 1144-45 (conceding that "the panel does not explicitly state it is applying a least restrictive means test"). We mentioned

---

[1]In fact, we only considered *Schowengerdt* to the extent necessary to consider the district court's decision. *See Quon*, 445 F. Supp. 2d at 1145-46.

other ways the OPD could have verified the efficacy of the 25,000-character limit merely to illustrate our conclusion that the search was "excessively intrusive" under *O'Connor*, when measured against the purpose of the search as found by the jury. *Quon*, 529 F.3d at 909. Moreover, the dissent's conclusion that we improperly analyzed the scope of the search is dependent upon its faulty conclusion that Quon had a diminished or nonexistent expectation of privacy in the messages. *See* Dissent at 1142, 1147-48.

Our analysis is in no way inconsistent with the cases cited by the dissent. *See* Dissent at 1142, 1147-48. The cases in which the Supreme Court has cautioned against employing a "least intrusive means" test have often involved circumstances in which the government had engaged in "years of investigation and study" that resulted in "reasonable conclusions" that the government conduct was necessary. *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 629 n.9 (1989). By contrast, Chief Scharf impulsively ordered the search of Quon's messages without so much as pausing to consider other ways to accomplish his stated goal of determining the efficacy of the numeric character limit. *See Quon*, 529 F.3d at 908-09. Moreover, unlike in the cases cited by the dissent, *see* Dissent at 1138-39, 1144-46, this case did *not* involve a "special needs" search. In any event, because we did not use a "least intrusive means" test, there is no conflict with either the Supreme Court or our sister circuits.

IV.

The dissent's conclusion that our panel's decision is "contrary to 'the dictates of reason and common sense' as well as the dictates of the Supreme Court," Dissent at 1148, is based on its loose recitation of "facts," untethered from the record evidence or jury findings. It is the dissent—rather than our opinion—that is at odds with *O'Connor* and the "operational realities" of the OPD. By stripping public employees of all rights to privacy regardless of the *actual* operational realities

of each workplace, the dissent would have us create a far broader rule than Supreme Court precedent allows. The majority of our court properly rejected the dissenting judges' efforts to do so.

---

IKUTA, Circuit Judge, dissenting from the denial of rehearing en banc, joined by O'SCANNLAIN, KLEINFELD, TALL-MAN, CALLAHAN, BEA, and N.R. SMITH, Circuit Judges:

The Ninth Circuit holds that a city police department violated the Fourth Amendment because it audited the messages sent from and received on its SWAT pagers to find out why the department was exceeding its contract with its text message service provider. According to the panel, the police department's failure to use a less intrusive search method violated a SWAT team member's Fourth Amendment rights: "if less intrusive methods were feasible, or if the depth of the inquiry or extent of the seizure exceeded that necessary for the government's legitimate purposes, the search would be unreasonable." *Quon v. Arch Wireless Operating Co.*, 529 F.3d 892, 908-09 (2008) (alterations omitted).

There are two problems with this conclusion: First, in ruling that the SWAT team members had a reasonable expectation of privacy in the messages sent from and received on pagers provided to officers for use during SWAT emergencies, the panel undermines the standard established by the Supreme Court in *O'Connor v. Ortega*, 480 U.S. 709 (1987), to evaluate the legitimacy of non-investigatory searches in the workplace. In doing so, the panel improperly hobbles government employers from managing their workforces. Second, the method used by the panel to determine whether the search was reasonable conflicts with binding Supreme Court precedent, in which the Court has repeatedly held that the Fourth Amendment does not require the government to use the "least intrusive means" when conducting a "special needs" search.

*See Bd. of Ed. of Independence Sch. Dist. No. 92 of Pottawatomie County v. Earls*, 536 U.S. 822, 837 (2002); *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 663 (1995); *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 629 n.9 (1989). The panel's decision to adopt a less intrusive means test conflicts not only with Supreme Court case law, but also with the decisions of seven of our sister circuits.

Because the panel's decision adopts a standard that makes it exceptionally difficult for public employers to go about the business of running government offices, and in doing so conflicts with Supreme Court precedent and the decisions of seven other circuits, I must dissent from the denial of rehearing en banc.

I

The Ontario Police Department obtained two-way pagers for its SWAT team members to enable better coordination, and more rapid and effective responses to emergencies. The SWAT team members were told orally and in writing that under the city's applicable policy, the text messages, including any personal messages, were subject to auditing and were not private.

Under the terms of the city's contract with its service provider, each pager could send and receive 25,000 characters at a flat rate; after that, the pagers incurred overage charges on a per-character basis. *Quon*, 529 F.3d at 897. During the first eight months the pagers were in use, a number of SWAT team members went over the 25,000 character allotment. One of the SWAT team members who exceeded the number of characters was Sergeant Jeffrey Quon. Unbeknownst to the department, Quon was using his pager to send and receive both personal and sexually explicit text messages. *Id.* at 898.

After reviewing one or two rounds of bills for the pagers, Lieutenant Steve Duke (who was in charge of providing and

accounting for the pagers) met with Quon about the overages. *Quon v. Arch Wireless Operating Co.*, 445 F. Supp. 2d 1116, 1124 (C.D. Cal. 2006). Duke informed Quon that the text messages were considered emails and subject to the city's computer usage policy, which allowed the department to audit the pages. *Quon*, 529 F.3d at 897. Quon, as a member of the police department and a city employee, had previously received a copy of the city's computer usage policy and had signed a form acknowledging that he had reviewed and understood the policy. *Id.* at 896. Duke told Quon that, in order to "streamlin[e] administration and oversight over the use of the pagers," *Quon*, 445 F. Supp. 2d. at 1125, if a SWAT team member paid all overage charges, Duke would not audit the text messages to determine if the team member's overage was due to business or personal use, but Duke also told Quon he "needed to cut down on his transmissions." *Quon*, 529 F.3d at 897. In April 2002, Quon was present at the supervisory staff meeting when Lieutenant Duke reiterated that the text messages sent from and received on the SWAT pagers were subject to the city's usage policy and could be audited. Quon later received a memorandum from the Chief of Police stating: "Reminder that two-way pagers are considered email messages. This means that messages would fall under the City's policy as public information and eligible for auditing."

In August 2002, less than four months after this meeting, and after the pagers had been in use for only eight months, Lieutenant Duke made it known that "he had grown 'tired of being a bill collector with guys going over the allotted amount of characters on their text pagers.' " *Quon*, 445 F. Supp. 2d. at 1125. In response, the Chief of Police ordered an audit of the text messages to determine whether the police department's contract with their service provider was sufficient to meet its needs for text messaging. *Quon*, 529 F.3d at 897-98.

Upon examination of the transcripts, it was clear that Quon was using the pager for more than the "light" personal use allowed under the city's policy. Of the more than 450 texts he

sent while on duty in a single month, only 57 of them were for business purposes. The remainder were personal. The Chief of Police sent the matter to internal affairs for an investigation "to determine if someone was wasting . . . City time not doing work when they should be." Quon (as well as his wife and friends) filed suit, alleging that the police department and individual officers had violated their Fourth Amendment rights by reviewing the transcripts of the text messages sent to and from Quon's SWAT pager.

## II

The panel reversed the district court's dismissal of the Fourth Amendment claims based on two untenable conclusions: First, the panel concluded that Quon had a reasonable expectation of privacy in the text messages sent from and received on his SWAT pager. Second, building on this erroneous conclusion, the panel concluded that the police department's search was not reasonable in scope because there were less intrusive ways the police department could have determined whether the contract with its service provider was sufficient to meet its paging needs.

## A

The panel departs from *O'Connor v. Ortega* in concluding that Quon's reasonable expectation of privacy in the text messages sent from and received on his SWAT pager was undiminished by the written policy or the needs of a police department managing a SWAT team. *O'Connor* mandates a practical approach to evaluating a public employer's searches of government offices and equipment. It requires us to consider the "operational realities of the workplace" when determining whether an expectation of privacy is reasonable. 480 U.S. at 717.

Under *O'Connor*, a public employer may conduct searches of employees subject only to a standard of reasonableness

"under all the circumstances." *Id.* at 725-26; *accord Vernonia*, 515 U.S. at 665. Although "[i]ndividuals do not lose Fourth Amendment rights merely because they work for the government instead of a private employer[, t]he operational realities of the workplace . . . may make some public employees' expectations of privacy unreasonable," and an employee's expectation of privacy "may be reduced by virtue of actual office practices and procedures, or by legitimate regulation." *O'Connor*, 480 U.S. at 717 (emphasis omitted).

These principles establish that Quon's expectation of privacy in the text messages he sent and received on his SWAT pager was either significantly diminished or non-existent. Quon was aware of the city's written policy mandating that even personal messages are subject to "access and disclosure." This official policy was reinforced by the "operational realities" of this particular workplace. Quon was using a SWAT pager, issued to him as a member of the SWAT team to facilitate the police department's goal of "enabl[ing] better coordination and a more rapid and effective response to emergencies by providing nearly instantaneous situational awareness to the team as to the other members['] whereabouts." *Quon*, 445 F. Supp. 2d at 1123. Given that the pagers were issued for use in SWAT activities, which by their nature are highly charged, highly visible situations, it is unreasonable to expect that messages sent on pagers provided for communication among SWAT team members during those emergencies would not be subsequently reviewed by an investigating board, subjected to discovery in litigation arising from the incidents, or requested by the media.

Moreover, messages sent from and received by the SWAT pagers may be subject to the California Public Records Act, which makes most police records accessible to the public and requires police departments to review and disclose an exceptionally wide range of public records. Under this act, "[p]ublic records are open to inspection by the public at all times during the office hours of the state or local agency and every person

has a right to inspect any public record," except under specified circumstances. Cal. Gov't Code § 6253(a). Government employees in California are well aware that every government record is potentially discoverable at the mere request of a member of the public, and their reasonable expectation of privacy in such public records is accordingly reduced. As noted in *O'Connor*, where the public has access to a government workplace, it may be that "no expectation of privacy is reasonable." 480 U.S. at 717-18.

In light of these operational realities, a police officer could not reasonably expect to keep communications over a SWAT pager confidential. Rather, Quon could have avoided exposure of his sexually explicit text messages simply by using his own cell phone or pager. *See O'Connor*, 480 U.S. at 725 (noting that a government employee "may avoid exposing personal belongings at work by simply leaving them at home"); *see also Katz v. United States*, 389 U.S. 347, 351 (1967) ("What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.").

Under these circumstances, balancing whatever remained of Quon's expectation of privacy with the police department's need to manage its SWAT pagers, the police department's search was "justified at its inception" and "was reasonably related in scope to the circumstances which justified the interference in the first place." *O'Connor*, 480 U.S. at 726. The panel's conclusion to the contrary, based solely on the informal statement of Lieutenant Duke that he personally would not audit the pagers if the SWAT team members agreed to pay for any overages, departs from the practical approach of *O'Connor* and effectively precludes a public employer from undertaking investigations reasonably necessary to conduct its business.

### B

As troubling as this misreading of *O'Connor* is the panel's conclusion that in light of Quon's reasonable expectation of

privacy, the scope of the police department's search was unreasonable. To reach this conclusion, the panel quotes *Schowengerdt v. Gen. Dynamics Corp.* for the principle that "[i]f less intrusive methods were feasible, or if the depth of the inquiry or extent of the seizure exceeded that necessary for the government's legitimate purposes, such as its interest in security, the search would be unreasonable and [the employee's] Fourth Amendment rights . . . would have been violated." 823 F.2d 1328, 1336 (9th Cir. 1987) (footnotes omitted). Relying on this language, the panel rejected the district court's determination "that there were no less-intrusive means" to determine whether the 25,000-character limit was sufficient and concluded that the scope of the search was unreasonable. According to the panel, because the city could have used other less intrusive means to accomplish the objectives of the search, the city violated Quon's Fourth Amendment rights. *Quon*, 529 F.3d at 908-09.

The panel's reliance on *Schowengerdt* is misplaced. The quoted language from that case has been superceded not once, but three times by subsequent Supreme Court opinions. The Court stated in *Skinner* that "[t]he reasonableness of any particular government activity does not necessarily or invariably turn on the existence of alternative 'less intrusive' means." 489 U.S. at 629 n.9 (internal quotation marks omitted). Again the Court stated in *Vernonia*, "[w]e have repeatedly refused to declare that only the 'least intrusive' search practicable can be reasonable under the Fourth Amendment." 515 U.S. at 663. Finally, for a third time, with some frustration, the Court reiterated in *Earls* that "this Court has repeatedly stated that reasonableness under the Fourth Amendment does not require employing the least intrusive means." 536 U.S. at 837. The Supreme Court has repeatedly rejected a "least intrusive means" analysis for purposes of determining the reasonableness of a search in a "special needs" context.

And yet the panel does exactly what the Supreme Court has precluded. Although the panel does not explicitly state it is

applying a least restrictive means test, it does just that. Rather than evaluate whether the search "*actually* conducted" by the police department was "reasonably related to the objectives of the search and not excessively intrusive in light of [its purpose]," as *O'Connor* requires us to do, 480 U.S. at 726 (emphasis added), the panel looks at what the police department *could* have done. As the panel explains, "[t]here were a host of simple ways to verify the efficacy of the 25,000 character limit . . . without intruding on Appellants' Fourth Amendment rights." *Quon*, 529 F.3d at 909. The panel then proposes other means of verifying the number of personal pages sent:

> For example, the police department could have warned Quon that for the month of September he was forbidden from using his pager for personal communications, and that the contents of all of his messages would be reviewed to ensure the pager was used only for work-related purposes during that time frame. Alternatively, if the Department wanted to review past usage, it could have asked Quon to count the characters himself, or asked him to redact personal messages and grant permission to the Department to review the redacted transcript. Under this process, Quon would have an incentive to be truthful because he may have previously paid for work-related overages and presumably would want the limit increased to avoid paying for such overages in the future. These are just a few of the ways in which the Department could have conducted a search that was reasonable in scope.

*Id*.

Because the panel could come up with a "host of simple ways" that would be less intrusive, it concluded that the police department's search was excessively intrusive and therefore violated Quon's Fourth Amendment rights. *Id.* This

is the essence of the "least intrusive means" test, which the Supreme Court has expressly rejected. Indeed, the panel's approach fits squarely within the Supreme Court's explanation of why the least intrusive means test is *not* appropriate: "[i]t is obvious that the logic of . . . elaborate less-restrictive-alternative arguments could raise insuperable barriers to the exercise of virtually all search-and-seizure powers, because judges engaged in *post hoc* evaluations of government conduct can almost always imagine some alternative means by which the objectives of the government might have been accomplished." *Skinner*, 489 U.S. at 629 n.9 (internal quotation marks, alterations, and citations omitted); *accord Earls*, 536 U.S. at 837. The Ninth Circuit has similarly held that it is improper to apply the "least restrictive means" test in the context of a "special needs" search. *See Yin v. California*, 95 F.3d 864, 870 (9th Cir. 1996) ("Under the balancing test, the Court determines if a search is reasonable by weighing the privacy interests of the individual against the government's interest in the search . . . the government does not have to use the least restrictive means to further its interests.").

Seven other circuits have followed the Supreme Court's instruction and explicitly rejected a less intrusive means inquiry in the Fourth Amendment context. *See Davenport v. Causey*, 521 F.3d 544, 552 (6th Cir. 2008) ("Also irrelevant, despite plaintiffs' argument to the contrary, is whether or not the officer had other means of force at his disposal. The Fourth Amendment does not require officers to use the best technique available as long as their method is reasonable under the circumstances." (internal quotation marks and alterations omitted)); *Lockhart-Bembery v. Sauro*, 498 F.3d 69, 76 (1st Cir. 2007) ("To the extent Lockhart-Bembery argues that Sauro acted unreasonably [under the Fourth Amendment] because there were other, less intrusive ways to reduce the safety hazard, that argument fails as a matter of law. There is no requirement that officers must select the least intrusive means of fulfilling community caretaking responsibilities." (footnote omitted)); *Cassidy v. Chertoff*, 471 F.3d 67, 79 (2d

Cir. 2006) ("The Supreme Court has repeatedly stated that reasonableness under the Fourth Amendment does not require employing the least intrusive means to accomplish the government's ends." (internal quotation marks omitted)); *Shell v. United States*, 448 F.3d 951, 956 (7th Cir. 2006) ("As an initial matter, we note that a search does not need to be the least intrusive alternative to be constitutionally valid, it simply has to be reasonable."); *United States v. Prevo*, 435 F.3d 1343, 1348 (11th Cir. 2006) ("Suffice it to say that the Fourth Amendment does not require the least intrusive alternative; it only requires a reasonable alternative."); *Shade v. City of Farmington*, 309 F.3d 1054, 1061 (8th Cir. 2002) ("The Fourth Amendment does not require officers to use the least intrusive or less intrusive means to effectuate a search but instead permits a range of objectively reasonable conduct."); *United States v. Melendez-Garcia*, 28 F.3d 1046, 1052 (10th Cir. 1994) (stating that the Fourth Amendment does not require police "to use the least intrusive means in the course of a [*Terry*] detention, only reasonable ones").

By reintroducing the least-intrusive means test into our Fourth Amendment jurisprudence, the panel departs from Supreme Court precedent and from the decisions of seven of our sister circuits, and reaches the untenable conclusion that the police department acted unreasonably in auditing messages sent and received on a SWAT pager, provided to SWAT members to facilitate communications during emergencies.

III

This case is, at its core, a workplace privacy case. The panel turns its back on "the common-sense realization that government offices could not function if every employment decision became a constitutional matter." *O'Connor*, 480 U.S. at 722 (quoting *Connick v. Myers*, 461 U.S. 138, 143 (1983)). By holding that a SWAT team member has a reasonable expectation of privacy in the messages sent to and from his

SWAT pager, despite an employer's express warnings to the contrary and "operational realities of the workplace" that suggest otherwise, and by requiring a government employer to demonstrate that there are no more less intrusive means available to determine whether its wireless contract was sufficient to meet its needs, the panel's decision is contrary to "the dictates of reason and common sense" as well as the dictates of the Supreme Court. The panel's decision undercuts the Supreme Court's consistent and explicit prohibition on reading a less intrusive means requirement into the Fourth Amendment's prohibition on unreasonable searches. It also undermines the reasoning and logic of *O'Connor v. Ortega*. I respectfully dissent from our denial of rehearing en banc.

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON REUTERS/WEST—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2009 Thomson Reuters/West.